1    Scott N. Auby (State Bar No. 168461)
        snauby@debevoise.com
2    David W. Rivkin (*pro hac vice*)
        dwrivkin@debevoise.com
3    Natalie L. Reid  (*pro hac vice*)
        nlreid@debevoise.com
4    DEBEVOISE & PLIMPTON LLP
     919 Third Avenue
5    New York, New York  10022
     TEL: (212) 909-6000; FAX: (212) 909-6836
6
     Eve H. Wagner (State Bar No. 126471)
7     ewagner@swattys.com
     SAUER & WAGNER LLP
8    1801 Century Park East, Suite 1150
     Los Angeles, California  90067
9    TEL: (310) 712-8100; FAX: (310) 712-8108

10   *Attorneys for Plaintiff Overseas Private Investment Corporation*

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**

12   ------------------------------------------------x

13   **OVERSEAS PRIVATE**                  :   **Case No. 12-CV-10860-GW (VBKx)**
     **INVESTMENT CORPORATION,**
                                           :   **MEMORANDUM OF POINTS**
14                                             **AND AUTHORITIES IN REPLY**
                    **Plaintiff,**          :   **TO OPPOSITION TO**
                                               **APPLICATION FOR RIGHT TO**
15   **-against-**                          :   **ATTACH ORDER**

16   **UHL HOLDINGS, LTD.**                :
     **(FORMERLY UNIWORLD**
17   **HOLDINGS, LTD.)**                   :   Date:  March 26, 2013
                                               Time:  10:00 a.m.
18                   **Defendant.**         :   Place: Courtroom 590, 5th Floor,
                                                      Royal Federal Building
19                                          :

20   ------------------------------------------------x

# TABLE OF CONTENTS

Page

I.   UHL DOES NOT CONTEST SATISFACTION OF FOUR
     OF THE FIVE REQUIREMENTS FOR ATTACHMENT. ...........................1

II.  OPIC HAS ESTABLISHED THE PROBABLE VALIDITY
     OF ITS CLAIM. ................................................................................4

     A.   The Undisputed Facts Show That OPIC Will Likely
          Win An Arbitration Award In Its Favor................................5

     B.   UHL Will Not Prevail On Its Defenses................................9

          1.   No "Priority of Payment" Allows UHL To Pay Itself
               Before Repaying OPIC. ...........................................9

          2.   OPIC Had No Obligation To Pursue A Separate Claim
               Against The Agency. ..............................................13

          3.   UHL Cannot Assert Setoff Against OPIC. ..............................14

III. CONCLUSION.........................................................................17

# TABLE OF AUTHORITIES

**CASES**

*California Retail Portfolio Fund GMBH & Co. KG. v. Hopkins Real Estate Group*, 122 Cal. Rptr. 3d 614, 193 Cal. App. 4th 849 (Cal. Ct. App. 2d Dist. 2011) ................................................................. 3

*J.P. Morgan Chase v. J.H. Electric of N.Y., Inc.*, 69 A.D. 3d 802, 893 N.Y.S.2d 237 (N.Y. App. Div. 2d Dep't 2010) ............ 8

*Loeb & Loeb v. Beverly Glen Music, Inc.*, 212 Cal. Rptr. 830, 166 Cal. App. 3d 1110 (Cal. Ct. App. 2d Dist. 1985) ...... 4

*Ronzo v. Vernon Indus., Inc.*, 195 Misc. 873, 91 N.Y.S.2d 52 (N.Y. Sup. Ct. 1949) .................................. 15

*SR International Business Insurance Company, Ltd. v. World Trade Center Properties, LLC*, Nos. 01CV9291 (HB), 02CV0017(HB), 2008 WL 2358882 (S.D.N.Y. June 10, 2008) ................................ 10

*Studio 159, LLC v. Pophang, LLC*, No. 12-cv-7127-RGK (JEMx), 2012 WL 6675790 (C.D. Cal. Dec. 21, 2012) .................................. 5

*USF & G v. Maggiore*, 299 A.D.2d 341, 749 N.Y.S.2d 555 (N.Y. App. Div. 2d Dep't 2002) .......... 11

*Waffer International Corporation v. Khorsandi*, 82 Cal. Rptr. 2d 241, 69 Cal. App. 4th 1261 (Cal. Ct. App. 2d Dist. 1999).. 13

*Winkelmann v. Excelsior Insurance Company*, 85 N.Y.2d 577, 650 N.E.2d 841 (N.Y. 1995) ................................ 11

**STATUTES**

C.C.P. § 481.190 ................................................................................ 4

C.C.P. § 484.020 .............................................................................. 13

C.C.P. § 484.050(b) ........................................................................... 4

C.C.P. § 484.070 .............................................................................. 13

C.C.P. § 484.090(a) ........................................................................ 1, 2

C.C.P. § 487.010(a) ......................................................................... 13

C.C.P. § 488.300 .............................................................................. 13

C.C.P. § 1281.8(b) ......................................................................... 1, 2

1    Plaintiff Overseas Private Investment Corporation ("OPIC") hereby submits

2 this Memorandum of Points and Authorities in Reply to the Opposition to

3 Application for Right to Attach Order ("Opposition", "Opp.") filed by Defendant

4 UHL Holdings, Ltd. ("UHL").

5    This Court should grant the Application because OPIC has satisfied all

6 statutory requirements for attachment, including demonstrating that without this

7 provisional remedy, OPIC will likely be unable to enforce the anticipated

8 arbitration award of damages against UHL.  The undisputed facts confirm the

9 strength of OPIC's case in the underlying dispute, and UHL has failed to identify

10 any viable defense that could defeat OPIC's arbitration claim for breach of

11 contract.

12 **I.    UHL DOES NOT CONTEST SATISFACTION OF FOUR**
13 **OF THE FIVE REQUIREMENTS FOR ATTACHMENT.**

14    To succeed on its Application for attachment of UHL's assets, OPIC must

15 establish five elements set forth in the California Code of Civil Procedure.  *See*

16 Mem. at 13; C.C.P. §§ 484.090(a), 1281.8(b).  UHL's Opposition focuses on only

17 one of those requirements—a showing of "probable validity" of OPIC's underlying

18 claim—and does not dispute that OPIC has satisfied all other requirements for

19 issuance of the writ.  *See* Opp. at 10.

20

1

1    Consequently, it is undisputed that OPIC's arbitration claim is one upon

2    which an attachment may be issued, Mem. at 14–15 (citing C.C.P.

3    § 484.090(a)(1)); that OPIC seeks this provisional remedy solely to ensure

4    recovery of its underlying claim, Mem. at 18 (citing C.C.P. § 484.090(a)(3)); and

5    that the amount to be secured by the attachment, including damages and reasonable

6    estimated fees and costs, is greater than zero, *id.* (citing C.C.P. § 484.090(a)(4)).

7    There is equally no dispute that OPIC has demonstrated that the arbitral

8    award it expects to receive may be rendered ineffectual if attachment is not

9    granted.  *See* Mem. at 19–21 (citing C.C.P. § 1281.8(b)).  In its opening brief,

10   OPIC identified several grounds for its concern that it will be unable to enforce the

11   future award in the absence of provisional relief, including (*i*) UHL's inability or

12   unwillingness to repay the Claim Compensation; (*ii*) Mr. Ilich's complete control

13   of UHL, and the resulting absence of any internal or external check on his ability

14   to transfer or dispose of UHL's assets; (*iii*) the likelihood that the only assets

15   available to satisfy the award would be cash or other liquid assets, which could

16   easily be removed from the United States to frustrate OPIC's enforcement efforts;

17   and (*iv*) allegations raised by a bankruptcy trustee in recently concluded litigation

18   which claimed that Mr. Ilich had engaged in precisely this sort of activity,

19   including transactions involving UHL, in disregard of his companies' obligations

20   to creditors.  *Id.* at 10–12, 19–21.

2

1    UHL offers no rebuttal of these grounds.  The Opposition argues that the

2    bankruptcy litigation "provides no support for OPIC's application," because "[t]he

3    facts surrounding the bankruptcy transactions provide no evidence of the validity

4    of OPIC's claims in this case."  Opp. at 16, 17.  This misses the point.  OPIC does

5    not rely on the bankruptcy trustee's allegations to support its underlying claim

6    against UHL.  Rather, those allegations, which were resolved through settlement

7    and neither proved nor disproved, served to highlight the substantial risk that UHL

8    could take steps to frustrate OPIC's enforcement efforts, and ultimately deny OPIC

9    effective relief on its claim.  UHL has provided no reason for OPIC or this Court to

10   conclude that this risk is not present in this case.

11          In fact, UHL's opposition only confirms OPIC's concerns that unless

12   attachment is granted, it could be impossible to enforce the expected arbitral

13   award.  In his declaration in support of the Opposition, Mr. Ilich admits that UHL

14   has already disposed of the funds it recovered from the unfrozen bank account in

15   2011, and that UHL "has very limited resources, nowhere near the amount

16   demanded by OPIC."  Ilich Decl. ¶ 25.  These statements provide the kind of

17   "compelling evidence" of apparent insolvency or severe financial difficulty that

18   California courts have found to satisfy the ineffectual relief requirement for

19   attachment in aid of arbitration.  *Cal. Retail Portfolio Fund GMBH & Co. KG. v.*

20   *Hopkins Real Estate Group*, 122 Cal. Rptr. 3d 614, 623, 193 Cal. App. 4th 849,

860 (Cal. Ct. App. 2d Dist. 2011) (requirement satisfied by two-year-old email from company's chief financial officer noting that "cash was 'being used up,'" and the company did not have "enough to meet all [its] needs").

## II.   OPIC HAS ESTABLISHED THE PROBABLE VALIDITY OF ITS CLAIM.

UHL's contention that "OPIC cannot meet its burden of proof" on the probable validity of its underlying claim, *see* Opp. at 10, ignores the record and misreads applicable law.

As UHL recognizes, "OPIC's claim[] ultimately will be decided only by the arbitration tribunal" to be appointed in accordance with the parties' Settlement Agreement.  Opp. at 3; *see* Mem. at 10 & Ex. 25.  While this Court "must consider the relative merits" of the parties' positions "and make a determination of the probable outcome" of the arbitration, *Loeb & Loeb v. Beverly Glen Music, Inc.*, 212 Cal. Rptr. 830, 837, 166 Cal. App. 3d 1110, 1120 (Cal. Ct. App. 2d Dist. 1985), the Code of Civil Procedure emphasizes that this evaluation "is not for the purpose of determining whether the claim is actually valid."  C.C.P. § 484.050(b).  Indeed, because this matter will be decided in arbitration, this Court will not make a final determination of OPIC's claim.

Instead, this Court must only consider whether OPIC has shown that it will "more likely than not . . . obtain [an award in its favor] on that claim."  C.C.P.

§ 481.190.  In other words, OPIC must establish a *prima facie* case on its claim, and show that there is a greater than fifty percent chance that it will defeat any defenses asserted by UHL.  *See Studio 159, LLC v. Pophang, LLC*, No. 12-cv-7127-RGK (JEMx), 2012 WL 6675790, at *3, *5 (C.D. Cal. Dec. 21, 2012).  OPIC's Application plainly satisfies this standard.

### A.    The Undisputed Facts Show That OPIC Will Likely Win An Arbitration Award In Its Favor.

Notwithstanding UHL's efforts to obscure and complicate the matter, this is a simple breach-of-contract case in which the undisputed facts establish that OPIC is entitled to the damages it seeks in the arbitration.  UHL's admissions in the Opposition and Ilich Declaration serve only to underscore the strength of OPIC's claim.

*First*, although "doing business with agencies of the government of Serbia entailed substantial risks, including the risk that the government agency would breach its contractual obligations," Ilich Decl. ¶ 6; Opp. at 4, UHL decided to insure only a portion of one of the risks with OPIC.  Under the March 2004 Insurance Contract, and in exchange for premiums paid by UHL, OPIC agreed to bear 90% of the risk of wrongful calling of a performance bond issued in connection with UHL's investment in the Serbian company Putnik SPA ("Putnik").  All other risks relating to the Putnik investment—including the risk of other

1    wrongful actions by the Serbian government's Agency for Privatization (the

2    "Agency"), and the risk of losses caused by currency depreciation—remained with

3    UHL.  Ilich Decl. ¶ 7; Opp. at 4; Mem. at 4; First O'Sullivan Decl. ¶ 5.

4         *Second*, a dispute arose between UHL and the Agency, and UHL initiated

5    arbitration seeking "recovery for the multiple items of damage suffered by UHL,"

6    including "a claim for damages based on the Agency's wrongful calling of the

7    bond." Ilich Decl. ¶ 10; Opp. at 4–5.[1]  The April 2007 arbitration award granted

8    many of UHL's claims, and the damages awarded expressly included

9    "compensation for the wrongful calling of the performance bond" in the amount of

10   $2.2 million with interest.  Opp. at 5; Ilich Decl. Ex. A, at 4; First O'Sullivan Decl.

11   ¶ 7.

12        *Third*, in October 2007, the full amount of the award was deposited into

13   UHL's Serbian bank account.  Pursuant to a court order, 429 million Serbian dinars

14   were transferred from the Agency's account to UHL's account in Serbia in

15   satisfaction of the arbitration award.  Opp. at 6; Ilich Decl. ¶ 13.  At the time of the

16   transfer, the deposited dinars were "worth $8,244,000" and "would have

17   essentially covered all three damage items enumerated in the ICC award,"

---

18   [1]    UHL did not seek assistance from OPIC with regard to this arbitration, nor did
19        it keep OPIC apprised of the progress of the arbitral proceeding.  *See*
         Declaration of Robert O'Sullivan in Support of Reply to Opposition to
20        Application for Right to Attach Order and Writ of Attachment, Mar. 18, 2013
         ("Second O'Sullivan Decl."), ¶¶ 6–7.

1   including compensation for the wrongful calling.  *Id.*; *see also* Ilich Decl. Ex. F

2   (July 2011 email from Mr. Ilich stating that amount of award "was (around)

3   $8,244,000").  UHL was unable to access these funds, however, because the

4   Agency froze the account.  Ilich Decl. ¶ 13; Opp. at 6; Mem. at 5; First O'Sullivan

5   Decl. ¶ 8.

6        *Fourth*, due to its inability to recover the compensation awarded by the

7   arbitral tribunal, UHL submitted an insurance claim to OPIC in January 2008

8   seeking payment of 90% of the value of the wrongfully called performance bond.

9   First O'Sullivan Decl. ¶ 9 & Ex. 3; *see also* Ilich Decl. ¶ 15; Opp. at 6.  Pursuant to

10  the March 2008 Settlement Agreement, which is governed by New York law,

11  OPIC paid UHL the "$1.98 million as required by the insurance policy."  Opp.

12  at 6; Ilich Decl. ¶ 15; Mem. at 4–5; First O'Sullivan Decl. ¶¶ 9–10.[2]  As UHL's

13  own insurance claim makes clear, UHL sought and received payment from OPIC

14  on the premise that the compensation for its wrongful calling claim was frozen in

15  the Serbian bank account.  *See* Declaration of Robert O'Sullivan in Support of

16  Reply to Opposition to Application for Right to Attach Order and Writ of

17  Attachment, Mar. 18, 2013 ("Second O'Sullivan Decl."), ¶¶ 8–11 & Exs. 2–3;

18

19  [2]   UHL did not submit a valid and complete application for compensation under
         the Insurance Contract until the beginning of 2008.  Second O'Sullivan Decl.
20       ¶¶ 4–5, 9–11.  OPIC paid UHL's claim in March 2008.  Opp. at 6; Ilich Decl.
         ¶ 15.

First O'Sullivan Decl. Ex. 3, at 24.

*Fifth*, in exchange for the nearly $2 million it received as Claim Compensation, UHL "g[ave] up its portion of the [arbitral] award relating to the Wrongful Calling" by assigning all rights to that portion of the funds to OPIC. Ilich Decl. ¶ 18; Mem. at 5; First O'Sullivan Decl. ¶ 10. As a result, "part of the money being held in Serbia belonged to OPIC." Ilich Decl. ¶ 22; *see also* First O'Sullivan Decl. Ex. 16.

*Sixth*, in July 2011, UHL obtained the release of the "funds that had been frozen since October 2007." Ilich Decl. ¶ 23; Mem. at 7; First O'Sullivan Decl. ¶ 14. While the value of the unfrozen funds in U.S.-dollar terms had declined to approximately $5.07 million due to currency depreciation, Opp. at 7, UHL nevertheless recovered more than twice the amount it owes OPIC.

*Finally*, upon the release of the unfrozen funds, UHL transferred the money to the United States, free of any encumbrances. Ilich Dec. Ex. F; Mem. at 7–8, First O'Sullivan Decl. ¶ 14. To date, however, UHL has not repaid OPIC a single dollar of the Claim Compensation. Mem. at 9; First O'Sullivan Decl. ¶ 16.

These undisputed facts satisfy all the elements of breach of contract under New York law: while OPIC performed its obligations under the Settlement Agreement by paying UHL the Claim Compensation of $1.98 million, UHL breached the contract by refusing to repay OPIC after recovering more than twice

the amount owed, and OPIC has suffered damages in the amount of the Claim Compensation, plus interest, and the costs and attorneys' fees expended to enforce its contractual rights.  *See, e.g.*, *J.P. Morgan Chase v. J.H. Electric of N.Y., Inc.*, 69 A.D. 3d 802, 803 893 N.Y.S.2d 237, 237 (N.Y. App. Div. 2d Dep't 2010) (identifying elements of breach-of-contract claim).

## B.     UHL Will Not Prevail On Its Defenses.

None of the arguments UHL raises in its attempt to evade attachment will defeat OPIC's claim.

### 1.     No "Priority of Payment" Allows UHL To Pay Itself Before Repaying OPIC.

UHL's unilateral assertion of a priority of claims or payment, which allegedly justifies its refusal to pay OPIC, finds no support in the record or in New York law.

UHL contends that the April 2007 award "order[ed] the Agency to pay specific items of damage to UHL in accordance with a priority set forth in the award," and that compensation for the wrongful calling was "[t]he last item in priority."  Opp. at 2, 5; Ilich Decl. ¶¶ 10–12.  As support for this contention, however, UHL can point only to the fact that each of the arbitral tribunal's holdings on UHL's different claims appears in a different numbered paragraph, and the paragraph granting UHL's wrongful calling claim happens to come last.

*See* Ilich Decl., Ex. A, at 19 (of four paragraphs granting claims, decision on wrongful calling appears in fourth paragraph).  Nothing in the award indicates that the tribunal intended to create any priority among the claims by the order in which it happened to set out its decisions.  There is simply no support in the arbitral award for UHL's position that, upon recovering more than $5 million from the unfrozen account, it was entitled to use all the money as compensation for "the first priority damage item awarded in the arbitration."  Opp. at 3; Ilich Decl. ¶ 23.

There is also no support in New York law for UHL's insistence that it must be "made whole," by receiving full compensation for all its losses, before it is required to repay OPIC.  *See* Opp. at 14.  Relying on cases about equitable subrogation, UHL argues that "OPIC has no right to any reimbursement of the amount it paid under its insurance policy" because "the Agency has not yet paid UHL the full amount of its damages."  Opp. at 14.  UHL is wrong in every respect.

*First*, under New York law, the "made whole" doctrine and other principles of equitable subrogation do not apply to contractual disputes involving clearly established and defined assignment rights.  As the District Court for the Southern District of New York explained, "[t]here are two types of subrogation, contractual and equitable," and

> [t]he *only instance* in New York where the insurer may have to wait for the insured to be 'made whole' is the narrow situation in which the insurer seeks *equitable subrogation* against its own insured and the proceeds of insurance plus

> the insured's recovery from the negligent third party fall
> short of making the insured whole.

*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Center Prop., LLC*, Nos. 01CV9291

(HB), 02CV0017(HB), 2008 WL 2358882, at *2, *10 (S.D.N.Y. June 10, 2008)

(emphases added).  The clause in the Settlement Agreement by which UHL

unequivocally assigned "all of [its] right, title, and interest" in the compensation

relating to the wrongful calling claim to OPIC is a form of contractual subrogation.

O'Sullivan Decl. Ex. 7 § 2(a); *see SR Int'l Bus. Ins. Co., Ltd.*, 2008 WL 2358882,

at*2.  UHL's reliance on the equitable "made whole" doctrine is misplaced.

  *Second*, even if the "made whole" doctrine applied, UHL would still have no

basis to refuse repayment of the Claim Compensation.   New York courts have

repeatedly held that the doctrine rests on the assumption that in exchange for

premiums, the insurer has agreed to bear all the risk of the losses suffered by the

insured.  *See Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 583, 650 N.E.2d

841, 845 (N.Y. 1995) ("The [made whole] rule is based upon the nature of the

relationship between the insurer and the insured—if the loss of one of the two must

go unsatisfied, it should be the insurer who has been *paid to assume risk of

loss*[.]") (emphasis added); *USF & G v. Maggiore,* 299 A.D.2d 341, 344, 749

N.Y.S.2d 555, 559 (N.Y. App. Div. 2d Dep't 2002) ("The equitable principle

underlying the made whole rule is that the burden of loss should rest on the party

1   *paid to assume the risk*[.]" (quoting 16 Couch, Insurance 3d § 223:136, at 233-

2   152–223-153)) (emphasis added).

3        As UHL has conceded, however, OPIC was only paid to assume a portion of

4   the risk of a single loss—the risk that the Agency would wrongfully call the

5   performance bond.  *See supra* at 4.  All other losses, including the currency risk

6   that reduced the value of the Serbian dinars ultimately recovered from the unfrozen

7   account, remained with UHL.  Forcing OPIC to wait until UHL is made whole for

8   losses OPIC never agreed, and was never paid, to cover would be contrary to both

9   the Insurance Contract and New York law.

10        *Third*, there is no dispute that the funds transferred to UHL's Serbian

11   account in October 2007 included the compensation awarded for the wrongful

12   calling of its performance bond.  *See supra* at 4–5.  As UHL repeatedly

13   acknowledged, that portion of the frozen funds belonged to OPIC, and UHL was

14   obliged to repay it as soon as the account was released.  *See id.*; *see also* First

15   O'Sullivan Decl. ¶ 13 & Exs. 15–17.  It is only now, after recovering—and

16   apparently spending—more than twice the amount it owed OPIC, that UHL has

17   asserted arguments about priority and full compensation for all losses in an attempt

18   to excuse its refusal to pay OPIC.

19        *Finally*, UHL's contention that "granting the attachment would place OPIC

20   in a priority position to which it is not entitled," Opp. at 15, betrays a fundamental

1    misunderstanding of this provisional remedy.  UHL argues that the Settlement

2    Agreement does not give OPIC "rights to the general income and assets of UHL,"

3    and asserts that any attachment "should be specifically directed only to money

4    received from the Agency directly traceable to recovery for the wrongful calling of

5    the Putnik bond."  *Id.* at 16.

6          But it is California law, not the Settlement Agreement, that determines

7    which property may be subject to attachment.  As California courts have long

8    recognized, this remedy allows "a plaintiff with a contractual claim to money (*not*

9    *a claim to a specific item of property*) [to] have various items of a defendant's

10   property seized before judgment and held . . . for execution after judgment."

11   *Waffer Int'l Corp. v. Khorsandi*, 82 Cal. Rptr. 2d 241, 247, 69 Cal. App. 4th 1261,

12   1271 (Cal. Ct. App. 2d Dist. 1999) (reviewing history of attachment remedy)

13   (emphasis added).  Accordingly, the Code of Civil Procedure expressly permits

14   attachment of "all corporate property" for which any of a wide range of levying

15   methods is authorized.  C.C.P. §§ 484.020, 487.010(a), 488.300.  UHL has asserted

16   no exemption from attachment for any property.  *See id.* § 484.070.

17                 **2.     OPIC Had No Obligation To Pursue A Separate Claim**
                           **Against The Agency.**
18

19         In its opposition papers, UHL repeatedly suggests that OPIC is not yet

20   entitled to repayment, and must wait until UHL is fully compensated for all losses,

13

because OPIC did not initiate legal action against the Agency to recover the amount it paid UHL.  *See* Opp. at 1–3, 7–8, 13, 15; Ilich Decl. ¶¶ 14, 18–22, 26. This argument must fail.  The Settlement Agreement expressly provides:

> It is understood by the Investor that *OPIC is under no obligation to pursue any right of assignment or subrogation, nor to attempt to enforce or realize any proceeds from, nor to take any action . . . ,* nor to refrain from taking any action, with respect to the Assigned Rights or any other right which OPIC has acquired in connection with the Claim or under this Agreement; *and OPIC shall incur no liability to the Investor for any such action or inaction.*

First O'Sullivan Decl. Ex. 7, § 7(b) (emphasis added).

In other words, while OPIC could proceed against the Agency if it chose, it had no duty to do so.  Neither the assignment of rights, nor UHL's consequent obligation to repay OPIC when it recovered the funds, was in any way contingent on whether OPIC pursued a separate claim against the Agency.

### 3.     UHL Cannot Assert Setoff Against OPIC.

UHL argues that OPIC's claim should be reduced to "take into account, and thus be offset by, the $900,000 that was due from OPIC to UHL for the wrongful calling of the Srbija Turist bond."  Ilich Decl. ¶ 40.  But as UHL concedes, in February 2012, it "*withdr[ew] with prejudice* any claim it may have against OPIC with respect to its investment in Srbija Turist."  *Id.* Ex. J (emphasis added); *see also id.* ¶ 39.  UHL cannot now be heard to assert setoff premised on the existence of a claim it has unequivocally withdrawn.

1    UHL offers two arguments in an attempt to excuse its reliance on a claim it

2    has expressly waived.  Neither will withstand scrutiny.  *First*, UHL contends that

3    "[i]f this offset is ignored, then OPIC provided no consideration whatsoever in

4    exchange for UHL agreeing that it no longer had an affirmative claim against

5    OPIC."  Ilich Decl. ¶ 39.  However, nothing in New York law—which also

6    governs the Srbija Turist insurance contract and any related claim UHL might have

7    had against OPIC—requires that UHL receive consideration from OPIC in

8    exchange for the release of such claims.

9    UHL withdrew all claims against OPIC because it was required to do so by

10   its settlement with the Serbian Government.  *See* Ilich Decl. Ex. I, Art. 2 (UHL

11   must "deliver to the Agency a copy of the statement sent to [OPIC] with

12   confirmation of its receipt by OPIC, whereby the Buyer is cancelling any and all

13   current and future demands and claims from OPIC related to the former

14   investments of [UHL] in the Republic of Serbia.").   OPIC was merely the third-

15   party beneficiary of this settlement; by definition, a third-party beneficiary

16   provides no consideration for the benefit conferred by the agreement between the

17   parties.  *See Ronzo v. Vernon Indus., Inc.*, 195 Misc. 873, 874, 91 N.Y.S.2d 52, 54

18   (N.Y. Sup. Ct. 1949) (A "third party beneficiary" can "enforce a contract against

19   the promisor" so long as "the intention of the contracting parties was clearly to

20

15

1  benefit the third party.  Such a third party is, indeed, a donee beneficiary, as no

2  consideration moves from him.").

3      *Second*, UHL contends that it "agreed to this provision based on its

4  understanding that OPIC had already in effect paid UHL for the Srbija Turist

5  wrongful calling by way of an offset against the sum otherwise due to OPIC for

6  reimbursement of the Putnik wrongful calling claim."  Ilich Decl. ¶ 39.  UHL has

7  no valid basis for this belief.

8      UHL's settlement with the Serbian Government was concluded at the end of

9  January 2012, *see id.* Ex. I, at 46, and it provided its waiver and release of "all

10  claims or demands against OPIC" at the end of February 2012, *see id.* Ex. J.  By

11  that time, any doubt UHL could have had about OPIC's intent to enforce its right

12  to receive the full $1.98 million had been dispelled by two communications from

13  Robert O'Sullivan, then-Acting Deputy General Counsel for OPIC.  On August 19,

14  2011, Mr. O'Sullivan wrote Mr. Ilich to "mak[e] a demand for immediate

15  repayment of the compensation paid to UHL, in the amount of $1,980,000."  First

16  O'Sullivan Decl., Ex. 21, at 107.  And on December 15—more than a month

17  before UHL's settlement with the Serbian Government, and more than two months

18  before UHL sent its letter withdrawing any Srbija Turist-related claims—

19  Mr. O'Sullivan again wrote to Mr. Ilich to ensure "that there is no

20  misunderstanding as to OPIC's firm intention to enforce our claim for return of the

$1,980,000 claim payment that we made to Uniworld in 2008." Second O'Sullivan Decl. ¶¶ 13–15 & Ex. 3. UHL cannot rely on wishful thinking to reduce its debt to OPIC.

## III.   CONCLUSION

For the foregoing reasons, OPIC respectfully requests that the Court issue a right to attach order and a writ of attachment against UHL in the amount of $1,980,000 plus interest and reasonable estimated attorneys' fees and costs, to be secured by all corporate property which is subject to attachment pursuant to C.C.P. § 487.010.

Respectfully submitted,

 /s/  Scott N. Auby

_____

Scott N. Auby
David W. Rivkin
Natalie L. Reid
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022

Eve Wagner
SAUER & WAGNER LLP
1801 Century Park East
Suite 1150
Los Angeles, California  90067

Dated:    March 18, 2013